IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID LYONS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>　　　　Defendant. | Civil Action No. 2:15-cv-01598-LPL<br>Magistrate Judge Lisa Pupo Lenihan |

OPINION

I. Introduction

Plaintiff David Lyons ("Lyons") brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner of Social Security's ("Commissioner") denial of Lyons's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401–34, 1381–83f, respectfully. This matter is presently before the Court on cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 14 & 16). The parties developed the applicable record[1] through Social Security administrative proceedings. For the reasons that follow, Lyons's motion for summary judgment (ECF No. 14) will be denied, the Commissioner's motion for summary judgment (ECF No. 16) will be granted, and the Commissioner's decision will be affirmed.

II. **Procedural History**

Lyons first applied for DIB and SSI benefits on December 30, 2009, alleging disability beginning November 15, 2009. (R. at p. 66). Both applications were denied on July 28, 2011,

---

[1] All references to the administrative record (ECF No. 8) will be cited as follows: (R. at p. xx).

following a hearing. (R. at p. 74). The Appeals Council upheld the denials on December 31, 2012. (R. at p. 84).

Lyons applied a second time for DIB and SSI benefits, protectively filing on January 7, 2013. (R. at p. 205). He originally averred that his disability began on November 7, 2009. (R. at p. 189). But he later amended his alleged disability onset date to July 29, 2011, accounting for the adverse final decision rendered in his first set of DIB and SSI applications. (R. at p. 12). Lyons's second set of DIB and SSI applications were initially denied on February 22, 2013. (R. at pp. 115, 120). Following this denial, Lyons requested an administrative hearing. (R. at p. 125).

The requested hearing occurred before Administrative Law Judge Kenworthy ("ALJ") on April 17, 2014, in Pittsburgh, Pennsylvania. (R. at p. 26). Lyons was represented by counsel. An impartial vocational expert ("VE") testified about positions available in the national economy to individuals like Lyons. (R. at pp. 46–48). In a written decision on April 23, 2014, the ALJ denied Lyons's second set of DIB and SSI applications. (R. at p. 21). After receiving an unfavorable decision from the ALJ, Lyons filed a request for review to the Appeals Council on June 19, 2014. (R. at p. 8). The Appeals Council denied Lyons's request on November 6, 2015; the ALJ's decision became the Commissioner's final decision. (R. at p. 1).

With no Social Security administrative remedies remaining, Lyons began this action to review the Commissioner's decision on December 9, 2015. (ECF No. 3). Lyons and the Commissioner filed cross-motions for summary judgment on April 4, 2016, and May 4, 2016,

respectively. (ECF Nos. 14 & 16). Each party filed briefs supporting their motions. (ECF Nos. 15 & 17). These pending motions for summary judgment are now ripe for disposition.[2]

### B. General Background

Lyons was born on January 18, 1963; he was forty-eight years old on his alleged disability onset date and fifty-one years old on the date of his hearing before the ALJ. (R. at pp. 12, 26, 86). He is a high school graduate and earned an Associate's Degree in 2007. (R. at p. 31).

Lyons alleged several impairments in his second set of DIB and SSI applications. His impairment list includes: post-traumatic stress disorder, lumbar spondylosis/facet arthropathy, carpal tunnel syndrome, fibromyalgia and myositis, osteopenia, and asthma. (R. at p. 86).

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."

---

[2] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Federal Rule of Civil Procedure 56. Banks v. Shalala, 43 F.3d 11, 13–14 (1st Cir. 1994); Flores v. Heckler, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." Sumler v. Bowen, 656 F.Supp. 1322, 1330 (W.D. Ark. 1987).

3

42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his ultimate findings, an ALJ must do more than simply state factual conclusions. He must make specific findings of fact. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, promulgated a five-step sequential evaluation process to determine whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003) (footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360–61 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947) (if the "grounds [relied on by the agency] are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). The Third Circuit Court of Appeals ("Third Circuit") has recognized the applicability

5

of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44, n.7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

## IV. The ALJ's Decision

The ALJ determined that Lyons engaged in no substantial gainful activity since his alleged disability onset date of July 29, 2011. (R. at p. 14). Further, the ALJ found that Lyons suffers from the following severe impairments: "[f]ibromyalgia, sciatica status post sciatic notch fusion, depression, NOS [,] and anxiety." (R. at p. 14); 20 C.F.R. §§ 404.1520(c), 416.920(c). However, the ALJ found that Lyons's impairments did not meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at p. 15).

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Lyons's "residual functional capacity"[3] ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except limited to tasks of a simple nature that would not require exposure to vibration or extremes of temperature. He should have an option for a change of position to sitting or standing or vice versa at intervals of about one half hour.

(R. at p. 17).

Lyons's "past relevant work"[4] experience includes working as a lab technician at Central

---

[3] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Hartranft v. Apfel, 181 F.3d 358, 359, n. 1 (3d Cir. 1999) (parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)–(ii), 416.945(a)(5)(i)–(ii).

[4] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations

6

Blood Bank and as a cashier. (R. at pp. 31–32, 47). The lab-technician position is generally considered "light,"[5] "skilled work,"[6] although Lyons arguably exerted a "medium"[7] effort. (R. at p. 47). Lyons's work as a cashier was "unskilled"[8] to "semi-skilled"[9] work. (R. at p. 47). Since the ALJ's RFC finding indicated that Lyons could perform light work, he concluded that Lyons could return to his past relevant work as a cashier. (R. at p. 19).

## V.  Discussion

The briefs submitted by Lyons and the Commissioner place steps four and five of the SSA's sequential-evaluation process at issue. The Court need only discuss step four, in which the ALJ determines whether a claimant may perform previous work. This is because the ALJ

---

governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571–404.1576, 416.971–416.976.

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[6] "Skilled work requires qualifications in which a person uses judgment . . . and may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements . . . [o]ther skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), 416.968(c).

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[8] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[9] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

7

had substantial evidence to conclude that Lyons could return to his previous relevant work as a cashier.

Three lines of reasoning support the ALJ's RFC determination and step-four conclusion that Lyons may work as a cashier. First, the cashier position is unskilled. Second, the ALJ's RFC finding and opinion, considered with the record, shows that substantial evidence supports his conclusions. Third, the ALJ properly discredited Lyons's treating sources' opinions because their conclusions are inconsistent with Lyons's medical record.

### A. Cashier Is an Unskilled Position

Cashiers are considered unskilled workers. The Dictionary of Occupational Titles ("DOT") lists cashiers with a Specific Vocational Preparation ("SVP") of 2. DOT at DICOT No. 211.462-010, 1991 WL 671840. SVP level 2 corresponds with an unskilled job. See Suarez v. Astrue, 996 F.Supp.2d 327, 334 (E.D. Pa. 2013) (explaining that SVP level 2 represents unskilled work).

Verbal mistakes do not change the fact that the DOT classifies cashiers at SVP level 2. The VE testified at Lyons's administrative hearing that Lyons worked "[as] a cashier. He's done this work at the light level, unskilled to semi-skilled." (R. at p. 47). Lyons pounced on the VE's statement, arguing that the ALJ's RFC finding that Lyons could only work in unskilled positions precludes him from working as a cashier, since the VE stated that a cashier could be "semi-skilled." (ECF No. 15 at p. 5; R. at p. 47). But the VE's mistaken testimony that a cashier is a semi-skilled position does not change the DOT's classification of cashiers at SVP level 2 (unskilled). Therefore, a cashier is an unskilled position, meaning that Lyons's RFC— prescribing unskilled work—is consistent with Lyons again working as a cashier.

8

### B. Substantial Evidence Supports the ALJ's RFC Determination

The ALJ's RFC determination is supported by substantial evidence. If the Court finds substantial evidence supporting the ALJ's findings, it must affirm even if it "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Ruchardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

When determining an RFC, "the ALJ must consider all evidence before him." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). An ALJ "may weigh the credibility of the evidence, [but] he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Id. As for weighing a claimant's credibility, an ALJ should "determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Hartranft, 181 F.3d at 362.

Lyons argues that the ALJ's RFC determination, finding that he could perform unskilled light work with a sit-stand option every half hour, is not supported by substantial evidence. (ECF No. 15 at p. 5). Lyons refers the Court to the "breadth and quality of the record establishing [his] severe physical and mental impairments, as well as four treating sources providing multiple medical opinions of support." (ECF No. 15 at p. 5). There are many symptoms of physical and mental health problems referred to in Lyons's brief supporting his motion for summary judgment.[10] A fairly long list of treatments and prescription medications

---

[10] Lyons's symptoms include: chronic pain, musculoskeletal tenderness, bilateral knee pain, chronic lower back pain, chronic sciatic pain, depression, anxiety, insomnia, and PTSD. (ECF No. 15 at p. 7).

9

that Lyons used, attempted, or uses follows his symptoms list.[11] Lyons's brief then states: "[t]his is respectfully not the picture of a man in his early-50s capable of returning to work as a full-time cashier." (ECF No. 15, p. 7). While Lyons and his counsel imply that the ALJ incorrectly determined Lyons's RFC, it is not the Court's place to reweigh the evidence the ALJ used in making his decision. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986). What this Court will do is determine whether substantial evidence supports the ALJ's RFC determination.

Lyons, at his administrative hearing, testified that "I used to read books like crazy" but that due to his lack of "concentration, I can't read anymore." (R. at p. 36). Lyons also talked about his lower back pain, rating it "above a 10" after he does "anything for 15 minutes, especially bending over or lifting." (R. at p. 38). After Lyons completes such a task, he stated that "he has to lay [sic] down." (R. at p. 38). Lyons added that he would feel lower back pain after he did "something strenuous." (R. at p. 38). When asked how he would define "strenuous," Lyons responded "Lifting, mowing the yard." (R. at p. 39).

The ALJ determined that Lyons's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but that Lyons's statements "are not entirely credible." (R. at p. 17). For instance, Lyons told his counselor, Ms. Verrengia, that he is "constantly on the computer," not once complaining to her about concentration loss when reading. (R. at p. 17). The ALJ further noted that Lyons told Dr. Schmidt, one of his physicians, that his remaining pain after sacroiliac-fusion surgery was a 3 on a scale of 1 to 10. (R. at p. 18). This is in stark contrast to Lyons's hearing testimony that his lower back pain is "above a 10."

---

[11] Lyons's treatment and prescription list contains the following: back surgery, failed steroid injections, Hydrocodone, Gabapentin, Cymbalta, Klonopin, Medrol Dosepak, Lidocaine patches, Flexeril, Naproxen, Ativan, and Effexor. (ECF No. 15 at p. 7).

10

(R. at p. 38). Given this evidence, the ALJ had a sufficient basis to determine that Lyons's complaints regarding pain and loss of concentration are not credible.

Substantial evidence supports the RFC the ALJ assigned Lyons. The ALJ's opinion, in conjunction with the record, reveals that he crafted the RFC by considering Lyons's medical issues in conjunction with Lyons's abilities. For instance, the ALJ highlighted that despite Lyons's osteoarthritis in his hands, he still can play music on his keyboard "to an extent." (R. at p. 17). Recognizing that Lyons still possesses fingering ability because he plays the keyboard, the ALJ determined that Lyons could "perform the much more limited activity in [sic] punching keys on a cash register or computer." (R. at pp. 17–18).

Several other examples show the ALJ tailoring Lyons's RFC based on his medical problems. Lyons has asthma. (R. at p. 86). Lyons's RFC forbids him from working in positions that could expose him to "extremes in temperature." (R. at p. 17). Lyons testified during his hearing that "if I do anything strenuous, I have to lay [sic] down after like 15 minutes because I can't move." (R. at p. 35). Lyons's RFC prescribes "light work" with "an option for a change of position to sitting or standing . . . at intervals of about one half hour." Accounting for residual back pain that Lyons has, his RFC allows him to avoid vibration. (R. at 17–19). And Lyons's "moderate functional limitations" related to his mental health are recognized in his RFC because it limits his work to "tasks of a simple nature." (R. at 17–18). Lyons's RFC, as created by the ALJ, accounts for Lyons's physical and mental health issues listed in the record. Therefore, substantial evidence supports Lyons's RFC.

### C. The ALJ Permissibly Weighed Treating Source Reports

Typically, "greater weight should be given to the findings of a treating physician than to a [consulting] physician." Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994). But "a statement by a

11

plaintiff's treating physician supporting an assertion that she is disabled or unable to work is not dispositive." Id. at 47–48 (internal quotation marks omitted). An ALJ "must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." Id. at 48. Controlling weight is not given to treating physicians' opinions when the opinions are "inconsistent with other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). And "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).

The ALJ properly ascribed less weight to Lyons's treating physicians and counselor due to inconsistent medical evidence. A form report dated April 12, 2013, by Dr. Kenneth Gold, Lyons's rheumatologist, conclusively stated that Lyons had no work capacity and had severe fibromyalgia. (R. at pp. 384–85). But Dr. Gold's form report contradicts notes from a more recent August 28, 2013 office visit, stating, in regards to Lyons's fibromyalgia, that he is "[d]oing extremely well." (R. at pp. 485–86).

Lyons's primary care physician, Dr. Ellen Berne, after having Lyons complete a social-security exam in February 2013, concluded "I don't think he can work at this time." (R. at pp. 358–59). The form accompanying the social-security exam was filled with boxes to check. (R. at pp. 349–54). Such forms are weak evidence. Mason, 994 F.2d at 1065. Dr. Berne determined that Lyons could not lift more than five pounds without suffering severe shoulder, elbow, and wrist pain. (R. at p. 358). But when Lyons visited Dr. Berne again on January 7, 2014, Dr. Berne wrote that Lyons said "his pain is well controlled 9/10 and he has a good energy level." (R. at p. 450). It is understandable that the ALJ would discount Dr. Berne's reports when a more recent report indicates Lyons had "well controlled" (R. at p. 450) pain while an older

report concludes that he should not work.

On the mental-health front, the ALJ appropriately gave little weight to check-box reports completed by Dr. Manuel Reich and Kathleen Verrengia, MA. The Third Circuit considers check-box reports to be weak evidence. Mason, 994 F.2d at 1065. Dr. Reich's report indicated marked limitations to Lyons's ability to perform work-related functions. (R. at pp. 371–72). Ms. Verrengia's report also indicated mostly marked impairments to Lyons completing job-related duties. (R. at pp. 368–70). Both Dr. Reich's report and Ms. Verrengia assessed Lyons's GAF score[12]; Ms. Verrengia rated Lyons a 55 and Dr. Reich gave Lyons a 50. (R. at pp. 368–72). Lyons' average GAF score, considering Ms. Verrengia's and Dr. Reich's assessments, lies in the moderate range of psychological, social, and occupational functioning. Access Behavioral Health, Global Assessment of Functioning, https://www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning.pdf.

The ALJ concluded that because Lyons's GAF score shows moderate functioning, it is inconsistent to indicate on check-box forms that Lyons has marked impairments, a lower level of mental functioning than the moderate level, in work-related skills. (R. at p. 18). While determining whether a moderate GAF score translates to either moderate or marked occupational limitations is likely an inexact science, there is enough evidence here for the ALJ to discount Dr. Reich's and Ms. Verrengia's reports due to their internal inconsistency. In addition, at Lyons's hearing, the ALJ personally observed that Lyons was "animated and gave no impression of depression." (R. at p. 19).

---

[12] GAF stands for Global Assessment of Functioning; this test measures an individual's psychological, social, and occupational functioning on a 1 to 100 continuum. Access Behavioral Health, Global Assessment of Functioning, https://www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning.pdf. A GAF score of 55 indicates moderate symptoms while a score of 50 indicates serious symptoms. Id.

13

After discounting the inconsistent reports provided by Lyons's treating physicians, the ALJ properly accorded greater weight to state agency doctors' opinions. An ALJ may give greater credit to non-treating, non-examining physicians' opinions than treating physicians' opinions when their opinions conflict. Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Dr. Mary Wyszomierski, M.D., a state-agency physician, noted that there were inconsistencies in the treating physicians' reports and that the treating physicians "relied heavily on the subjective report of symptoms and limitations provided by the claimant." (R. at p. 94). Dr. Wyszomierski rated Lyons' RFC as light exertional. (R. at p. 92). The ALJ concluded that Dr. Wyszomierski's opinion meshed with the objective medical record. (R. at p. 19). Lyons himself testified that he can mow his lawn, shovel snow, play his keyboard, and vacuum (albeit in short increments). (R. at pp. 39–41, 43). Therefore, the ALJ had good reason to give more weight to state-agency physician Dr. Wyszomierski's opinion than Lyons's treating physicians' opinions.

As for Lyons's mental-health capabilities, state agency employee Dr. Phyllis Brentzel, Psy.D., concluded that Lyons could perform "the basic mental demands of competitive work on a sustained basis." (R. at p. 96). Dr. Brentzel rated Lyons's social interaction, adaptation, and concentration and persistence qualities in the workplace as either moderately limited or not significantly limited. (R. at pp. 95–96). The ALJ gave substantial weight to Dr. Brentzel's opinion, noting that "it is consistent with the medical evidence." (R. at p. 19). Some medical evidence shows that Lyons is talkative with an appropriate, though sometimes anxious, affect. (R. at pp. 358, 451, 463, 466). Thus, the ALJ reasonably ascribed greater weight to Dr. Brentzel's opinion than Lyons's treating sources.

Therefore, the Court finds that: (1) Lyons's RFC, as determined by the ALJ, is backed by substantial evidence; and (2) substantial evidence shows that, at stage four, Lyons is not disabled

and is capable of resuming his previous work as a cashier.

## VI. Conclusion

For the foregoing reasons, Lyons's motion for summary judgment (ECF No. 14) will be denied, the Commissioner's motion for summary judgment (ECF No. 16) will be granted, and the Commissioner's decision will be affirmed.

Dated:

                                          LISA PUPO LENIHAN
                                          U.S. Magistrate Judge

cc:    All Counsel of Record